UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

LAMEL WILLIAMS,
LATISHA WILLIAMS, and
IRIS CENTENO,
                       Defendants.

_____

INTERIM DECISION AND ORDER

17-CR-00078(FPG)(JJM)

        Defendants are charged with various narcotics and firearms related offenses (Superseding Indictment [74]) arising from a March 21, 2017 search that was conducted pursuant to a search warrant signed earlier that day by Erie County Court Judge James Bargnesi for 198 Potomac Avenue, Upper Right apartment, and the person of defendant Lamel Williams [121-2].[1] Before the court are defendants' motions [77, 86, 101] to suppress evidence arising from that search. An evidentiary hearing was conducted on February 28 and March 6, 2018 [132, 134]. Oral argument was held on September 14, 2018 [177].

        For the following reasons, I conclude that there was no probable cause for the search.[2] Therefore, I will schedule a hearing to consider whether suppression of the evidence derived therefrom is warranted. *See* United States v. Leon, 468 U.S. 897 (1984), Herring v. United States, 555 U.S. 135 (2009), and United States v. Julius, 610 F.3d 60 (2d Cir. 2010).

---

[1]     Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]     In support of suppression, defendants also challenge the overbreadth of the search. That issue, as well as defendant Latisha Williams' standing to content the search, will be addressed in my Report and Recommendation, which will be issued at the conclusion of the additional proceedings set forth in this decision.

## BACKGROUND

The search warrant was supported by the Affidavit of Patrick McMahon, a Deputy Sheriff with the Erie County Sheriff's Office and *in camera* testimony from a confidential informant. In his supporting Affidavit, Deputy McMahon stated that he "received information from a confidential source that Lamel Williams, was selling cocaine in the Buffalo, NY area and utilizing 198 Potomac Avenue, Apartment 4 (Upper Right)" to do so ([121-1], p. 1 of 3 (CM/ECF), ¶2), and that a criminal history check revealed that defendant Williams[3] had "numerous felony drug related arrests" and was currently on supervised release. Id., ¶3. Deputy McMahon also stated that the informant "purchased cocaine from defendant Williams within the past ten days at 198 Potomac Avenue, Apartment 4 (Upper Right)" and was "familiar with cocaine . . . and the manner in which it is packaged and sold". Id., p. 2 of 3, ¶3.[4] He further stated that the informant identified defendant Williams from a booking photograph and "was driven to the area of Potomac Avenue . . . and did point out 198 Potomac Avenue . . . as the residence being utilized by Lamel Williams to distribute cocaine". Id., p. 2 of 3, ¶4.

The *in camera* testimony of the informant was transcribed and video recorded.[5] During the *in camera* testimony, the informant stated that "Limell stays" at 198 Potomac Avenue and sells "cocaine . . . crack and occasionally heroin and weed from that location". [123], p. 2.

---

[3]   All references to defendant Williams are to Lamel Williams, unless otherwise specified.

[4]   The paragraphs of Deputy McMahon's Affidavit is not consecutively numbered.

[5]   Thus far, defendants have been provided with a redacted version of the transcript and have not seen the video recording.

The informant also testified that he purchased cocaine from him at that location three days earlier, and had previously done so "over several times". Id., p. 3.

The informant testified that he entered 198 Potomac Avenue through the front door. Id., pp. 3-4. In describing the location of the particular apartment used by defendant Williams, the following colloquy occurred:

> "INFORMANT: Come in through the door, come in, you have to go up the next set of stairs, it will be on this side. [motioning to his right]
> JUDGE BARGNESI: On the right?
> INFORMANT: Come in, when you get to the front, it will be on this side. [motioning to his right]
> JUDGE BARGNESI: Okay. . . .
> INFORMANT: I[f] you come in, come straight through . . . this is the Apartment 1 [motioning to his right] . . . Apartment 2 [motioning to his left], come up the stairs Apartment 3. [motioning to his right]
> JUDGE BARGNESI: Okay.
> INFORMANT: If they was labeled as 1, 2, 3, it will be that one [motioning to his right] cause the fourth one is to the wall. [motioning to his left]
> JUDGE BARGNESI: Okay." Id., p. 4.

During this exchange the informant appeared to be describing the location of the apartment from his vantage point within 198 Potomac Avenue, but his orientation (*i.e.*, facing towards the back or the front of the house) was not clarified at that point. Immediately following this exchange, Deputy McMahon, who was an unsworn witness, interjected, "Describe it as the upper right as you look at the house." Id., p. 5. Judge Bargnesi then questioned, "The upper right"?, and although according to the transcript the informant responded "Yes", from reviewing the video I believe that it was Deputy McMahon who offered that response. Id. Deputy McMahon provided no explanation (and Judge Bargnesi did not inquire) as to the basis for his knowledge that it was the upper right apartment as you face the house. Tellingly, the informant could have also simply confirmed that it was the upper right apartment when viewed from

-3-

Potomac Avenue (if that were so), but instead found it necessary to stand up to demonstrate the layout of 198 Potomac Avenue:

> "So you come in, you come to the door, Apartment 1 is there as soon as you open. Pivot [turning to his left] next door, first landing, Apartment 2 [pointing straight ahead]. Come to the stairway [completing a 180 degree turn and facing in the opposite direction from his entry into the house], right here [pointing to the right]."[6]

The informant's description appears to demonstrate that the premises had a switchback staircase (*i.e.*, two parallel flights of stairs connected by a landing that required a 180 degree turn). By identifying the upper right apartment from his orientation within in the house (facing the street), it was the upper left, not upper right, apartment when viewed from Potomac Avenue.

The search warrant application, including Deputy McMahon's supporting Affidavit, and search warrant identified the premises to be searched as 198 Potomac Avenue, Apartment 4 (Upper Right)" [121-1 - 121-2]. However, the informant testified that the apartment was door 3, but it "[d]oesn't have a number". [123], p. 5. At that point, Judge Bargnesi stated, "Door 3, okay . . . Upper right apartment. Going to cross that off just in case". Id., pp. 5-6. He then proceeded to cross off Apartment 4 from the search warrant and from all portions of the search warrant application, except for one, leaving the apartment identified in the search warrant as "Upper Right", without any specification of the vantage point – *i.e.*, facing the house from Potomac Avenue. No further *in camera* testimony was taken.

At the evidentiary hearing, Deputy McMahon testified to certain information that was not conveyed to Judge Bargnesi. For example, Deputy McMahon testified that when the

---

[6] The portion of the transcript [123] from page 5, lines 11-15, is not entirely accurate. Therefore, I have relied on (and quote from) an unofficial chambers transcription.

-4-

informant was driven by 198 Potomac Avenue with law enforcement, he identified not just the house, but more specifically the upper right apartment as the target premises. February 28, 2018 hearing transcript [132], pp. 19, 153. He also testified that prior to submitting the search warrant application, the Erie County Sheriff's Department knew that defendant Lamel Williams was under supervised release and on home confinement at 198 Potomac Avenue, Apartment 4. Id., pp. 21-22.

During the execution of the warrant, Deputy McMahon testified that he observed that the apartment was identified by a number 4 (id., p. 34; gov. ex. 5 [121-4]), and that 198 Potomac Avenue also had a rear entrance. Id., p. 82. However, Detective McMahon denied having knowledge of the rear entrance until the search warrant was executed. Id., p. 159. Consistent with the informant's *in camera* testimony, defendant McMahon testified that there was a switchback staircase in the front entry of 198 Potomac Avenue. Id., pp. 112, 161.

## DISCUSSION

Defendants raise two challenges to the search warrant. First, they argue that by identifying the premises to be searched as "Upper Right" apartment, the search warrant was not sufficiently particularized; and second, they argue that the search warrant lacked probable cause because the reliability of the informant was not sufficiently established. Defendant Williams' Post-hearing Memorandum [168], pp. 9-11; defendant Latisha Williams' Post-hearing Brief [165], pp. 4-12 of 17 (CM/ECF); defendant Centeno's Post-hearing Brief [170], p. 2 of 13 (CM/ECF). The government disputes those arguments, and contends that even if the warrant was invalid, the exclusionary rule should not apply because "law enforcement acted in good faith reliance upon the

warrant" pursuant to Leon, *supra,* and that the cost of applying the exclusionary rule outweighs the benefits pursuant to Herring and Julius, *supra*. Government's Post-hearing Brief [171], pp. 11-18; government's Post-hearing Reply [176], pp. 5-10, 12-14, 16-18.

**A.     Was the Search Warrant Sufficiently Particularized?**

The objective of the particularity requirement is that searches "should be as limited as possible". Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925); Velardi v. Walsh, 40 F.3d 569, 576 (2d Cir. 1994). However," ambiguities in a warrant do not necessarily render a warrant invalid under the Fourth Amendment". United States v. Voustianiouk, 685 F.3d 206, 212 (2d Cir. 2012).  For example, "[i]f . . . the police possess information that clarifies the ambiguity . . . a search of the 'proper' premises may be permitted". United States v. Jefferson, 2011 WL 6778620, *2 (D. Conn. 2011). *See also* Velardi, 40 F.3d at 576 (a warrant that contains a partial misdescription of the place to be searched is valid "so long as the officer executing the warrant could 'ascertain and identify the target of the search with *no reasonable probability of searching another premises in error*'" (emphasis in original)).

The government acknowledges that the description of the premises to be searched as the "Upper Right" apartment "did not offer the most precise description available". Government's Post-hearing Reply [176], p. 8.  Instead, it argues that "the search was ultimately conducted in the place intended by the issuing judge and by the applying officer". Id.   In

support of that argument it relies on United States v. Williams, 69 Fed. Appx. 494 (2d Cir. 2003) (Summary Order), which it contends is "entirely analogous" to this case. Id.

   In Williams, the premises were described as a "'two story multi-family . . . dwelling . . . with . . . a brown side entrance door'", but no particular apartment was identified. 69 Fed. Appx. at 495. In finding that the warrant was sufficient, the Second Circuit relied on the fact that the officers who executed the warrant knew that the entrance door described in the warrant led to the subject apartment because they had previously purchased drugs through a confidential informant at that location and had surveilled the informant entering that apartment through that door. Id. at 496.[7] Under those circumstances, "the substance of what was presented to the issuing judge adequately supported the issuance of the warrant to search the particular premises and . . . there was no reasonable probability that the executing officers would mistakenly enter the wrong premises." Id.

   The circumstances here are readily distinguishable. Deputy McMahon knew (or should have known) from the informant's *in camera* testimony that "upper right" apartment could mean either of the two upper apartments depending on your vantage point, and that he and informant had a different understanding of which constituted the "upper right" apartment. "Where a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous." Jones v. Wilhelm, 425 F.3d 455, 463 (7th Cir. 2005).

---

[7] Appearing to analogize the circumstances here to those in Williams, the government argues that the officers executing the warrant in Williams "were familiar with the target premises because they *too* had purchased drugs there using a confidential informant and had surveilled the informant's use of the . . . entrance door, which was specified in the warrant." Government's Post-hearing Reply [176], p. 8 (emphasis added). However, here there is no evidence that the informant conducted controlled buys at 198 Potomac Avenue or that the informant was surveilled entering the premises.

While the government argues that Deputy McMahon's basis of knowledge came from the drive-by that was conducted with the informant, in which the informant pointed out the specific apartment (government's Post-hearing Reply [176], p. 7), that information was not presented to Judge Bargnesi, and also directly contradicted what the informant told Judge Bargnesi under oath. Unlike in Williams, here, law enforcement did not have an independent basis for knowing which apartment the drug sale occurred in. The only identification of the apartment from which drugs were purchased came from the informant, and the informant had provided conflicting information on that issue.

While the government points that the "correct apartment" was ultimately searched (government's Post-Hearing Brief [171], p. 14), that does not "validate a search that was unconstitutional because the officers conducting that search knew that the warrant lacked sufficient particularity". United States v. Fahey, 2008 WL 239152, *5 (E.D. Ill. 2008). Therefore, I conclude that the search warrant was not sufficiently particularized.

Even if the warrant could be deemed to be sufficiently particularized at the time it was obtained, defendant Latisha Williams argues that when the officers executed the warrant they knew that it was ambiguous, since any "reasonable officer seeing that '4' had been crossed off could also assume that apartment 4 was not to be searched". Defendant Latisha Williams' Post-hearing Brief [165], p. 11 of 17 (CM/ECF). "Absent exigent circumstances, nothing - neither the determination of probable cause nor the confirmation that a warrant is sufficiently particular - is meant to be left to the discretion of police officers executing a warrant." Jones, 425 F.3d at 462.

For example, in Fahey, the search warrant described the premises as "'Apartment D'", and being "'on the left at the top of the stairs'". 2008 WL 239152, *1.  When the warrant was executed, the officers learned that the upper left apartment was identified as unit "C". Id., *2  At that point, "[r]elying on information that was not included in the affidavit or otherwise presented to the judge who issued the warrant", the warrant was executed on Apartment C. Id., *3. Under those circumstances, the court concluded that "the officers ran afoul of the Fourth Amendment because they knew *before* executing the warrant that it did not particularly describe the place to be searched". Id.  (emphasis in original).  "[T]he officers circumvented the magistrate judge and resolved the warrant's ambiguity based on information that was not disclosed to the magistrate who issued the warrant", which "constitutes 'a violation of clearly-established, constitutional rights.'" Id. (*quoting* Jones, 425 F.3d at 465).

        Just as in Fahey, here the officers were confronted with an ambiguity before they executed the warrant.  The premises believed to be the upper right apartment was in fact clearly marked as Apartment 4 (gov. ex. 5 [121-4]), which contradicted the informant's testimony that the apartment "[d]oesn't have a number", and the fact that Judge Bargnesi specifically crossed off the reference to Apartment 4 in the search warrant.  That inconsistency presented an ambiguity, which was not resolvable by Deputy McMahon or the other executing officers based on the information supplied to Judge Bargnesi. *See* Jones, 425 F.3d at 463 ("the Fourth Amendment prohibits [the law enforcement officer] from applying his earlier surveillance and subsequent deductions to resolve the warrant's ambiguity rather than presenting those observations to a magistrate judge for determination").

**B.      Was the Search Warrant Supported by Probable Cause?**

The government argues that "[a] search warrant issued by a neutral and detached magistrate is entitled to substantial deference and doubts should be resolved in favor of upholding the warrant". Government's Post-hearing Reply [176], p. 9. "Deference to the magistrate, however, is not boundless . . . . reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213, 239 (1983). Therefore, "[e]ven if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances". Leon, 468 U.S. at 914-15.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39. "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence." United States v. Wagner, 989 F.2d 69, 72–73 (2d Cir. 1993). "If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and

that therefore other information that he provides, though uncorroborated, is also reliable." Id. at 73.

There was no information provided to Judge Bargnesi as to whether the informant had provided reliable information in the past. *See* Defendant Williams' Post-hearing Memorandum [168], p. 10. Defendant Latisha Williams also notes that the informant's criminal record was not elicited by Judge Bargnesi or supplied to him. Latisha Williams' Post-hearing Brief [165], p. 10 of 17 (CM/ECF). Therefore, the informant's reliability turns on whether the information he/she provided was corroborated in material respects by independent evidence. *See* Wagner, 989 F.2d at 72-73; United States v. Canfield, 212 F.3d 713, 720 (2d Cir. 2000) ("the corroboration of significant portions of [the informant's] statements demonstrates that [the informant] was truthful in this instance, regardless of [the informant's] criminal past").

In support of the reliability of the informant, the government points to the fact that the informant was questioned before Judge Bargnesi in a "face-to-face setting". Government's Post-hearing Reply [176], p. 10. That factor supports the informant's reliability. *See* United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) ("a face-to-face informant . . . runs the greater risk that he may be held accountable if his information proves false"). Additionally, by identifying defendant from a booking photograph and 198 Potomac Avenue from a drive-by, at least some of the informant's information was also corroborated.

While some amount of reliable and corroborated information was supplied, nothing else was done to confirm the informant's reliability. As defendant Williams argues, there was no corroboration that he "actually lived at 198 Potomac or was dealing drugs from that location". Defendant Williams' Post-hearing Memorandum [168], pp. 10-11. The informant was

not asked why he was providing the information, what (if anything) he was receiving in return for providing information, or the particulars of the drug purchase that occurred at 198 Potomac Avenue (*e.g.*, description of the interior of the apartment, amount of cocaine purchased, amount paid, packaging, and other contraband observed).  *See* Id., pp. 5, 10.

Additional indicia of the informant's reliability was necessary, since Judge Bargnesi was confronted with several unresolved inconsistencies that significantly eroded the informant's credibility and undermined probable cause to search any specific apartment.  Most notably, Deputy McMahon stated it was the upper right apartment when facing the font of the house, yet the informant appeared to identified the upper left apartment.  Also no explanation was given to Judge Bargnesi (nor did he ask) why there was an inconsistency between the application and the search warrant, which both identified the premises as Apartment 4, and the informant, who testified that the apartment was unnumbered.

These inconsistencies should have been explored, but they were not.  Without resolving the inconsistency between Deputy McMahon and the informant as to whether it was the upper right or left apartment, there was no probable cause to search any specific apartment.  While there was probable cause that defendant Williams resided in one of the two upper apartments, that was not sufficient.  "Even if the likelihood of error was roughly 50%, however, that is too great a risk under the law, which requires no reasonable probability of searching another premises in error".  United States v. Bershchansky, 788 F.3d 102, 112 (2d Cir. 2015).

Therefore, I find that the warrant issued for the search of the Upper Right apartment was invalid.

**C.     Is Suppression Warranted?**

Focusing exclusively on defendants' particularity challenge, the government argues that even if the search warrant is invalid on its face, suppression should be denied "because any defect in the warrant's particularity was an honest, inadvertent mistake and not intended to mislead the issuing judge". Government's Post-hearing Brief [171], p. 16. "The Leon good faith exception has been applied when a warrant lacked particularity . . . [or] was not supported by probable cause". United States v. Smith, 2007 WL 2088938, *5 (W.D.N.Y. 2007). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011). There are "four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.; Leon, 468 U.S. at 923.

Therefore, a hearing is necessary to determine whether suppression is warranted.[8] *See* Julius, 610 F.3d at 67 ("we remand for consideration of whether the deterrent effect of applying the exclusionary rule outweighs the cost of the rule's application, for example, whether the degree of police culpability in this case rose beyond mere . . . negligence such that application of the rule is necessary to compel respect for the Fourth Amendment's guarantees"). "It is necessary to consider the objective reasonableness, not only of the officers who eventually

---

[8]     Since the hearing will address the Leon factors, defendants' requests for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) (defendant Centeno's Post-hearing Brief [170], pp. 9-11; defendant Williams' Post-hearing Memorandum [168], pp. 14-16) are denied as moot.

-13-

executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Leon, 468 U.S. at 923, n. 24.

A conference to schedule the hearing will be held on October 11, 2018 at 11:00 a.m. In advance of that conference, the parties shall confer about a protective order to permit disclosure of the video of the *in camera* testimony to be released to defendants' counsel. If any party anticipates using that video at the hearing, the parties shall also be prepared to address how that may be accomplished to protect the identify of the informant.  Since the motion to suppress remains pending, the Speedy Trial Act calendar remains tolled through at least that date, pursuant to 18 U.S.C. §3161(h)(1)(D), and the parties' deadline for objections will not begin to run until I issue a Report and Recommendation.

**SO ORDERED.**

Dated:  October 3, 2018

> /s/ Jeremiah J. McCarthy
> JEREMIAH J. MCCARTHY
> United States Magistrate Judge